People v. Patterson 5-23-1348 Appellant, if you're ready, you may proceed and please identify yourself for the record. Thank you, Your Honor. Good morning, and good morning to my President Counsel. My name is Hannah Peterseff from the Office of the State Appellate Defender, and I represent Charlton Joshua Patterson, the appellant in this case. May it please the Court, We raised seven issues in this case, but there is only one that this Court needs to address, and that is the violation of Mr. Patterson's speedy trial rights. Granting relief on this issue would require the Court to reverse Josh's convictions outright, and it would therefore be unnecessary to address any of the other issues. However, I am, of course, happy to answer questions regarding any of those issues should this Court have them. But with the Court's permission, I plan to spend my time on the speedy trial issue. With just days left in the speedy trial term, the trial court in this case twice continued the trial date due to delays over which Josh had no control. The details of this issue are complicated, but the question before this Court is not, were both of these continuances attributable to Josh personally? If this Court concludes that either one was not, then this Court must conclude that Josh was tried outside the 120-day statutory speedy trial term and reverses convictions. Just to briefly remind this Court of the timeline here, it's undisputed that 106 days of the term ran from Josh's arrest on May 1, 2022, to August 15, 2022. The trial was originally scheduled for August 29, which would have been day 120. There were two relative continuances of that trial date, first from August 29 to October 3, and second from October 3 to January 17. Again, unless both of these continuances were properly attributed to Josh, he was tried outside the statutory term. Now, taking up the first continuance from August 29 to October 3, that continuance was not properly attributed to Josh. The primary reason for this is that the explicit reason the Court gave for continuing the trial was to find conflict-free counsel for Josh's brother, Simeon. And Josh properly objected to this delay of the trial. This Court has case law, particularly the Roberts case, explaining that speedy trial rights are personal rights. When a co-defendant is the sole reason for a delay, that delay cannot be charged to the defendant himself. And for that reason alone, this continuance should not have been attributed to Josh. Now, the State raises a couple of factual points that it argues change the analysis, but those factual points don't change anything at all. It is true that defense counsel, Josh's first attorney, Alex Enyart, filed a motion to continue on August 15. However, that motion was withdrawn on August 25, and counsel then demanded a speedy trial and objected to the delay of the August 29 trial date. So at most, there were 10 days attributable to Josh based on that motion to continue. Moreover, the motion to continue had no effect on the trial court's decision to move the trial date. Again, the explicit reason for moving the trial date was the need to find conflict-free counsel for Josh's brother. Counsel, let me interrupt you, though. The new attorney, was it Wilson that was appointed, though? Yes. Didn't he express to the court that he would not be prepared for trial on October 3rd, though? There were some comments made to that effect, and I will address those. But the point I want to make first is that even if that were true, even if that whole period from October 3rd to January 17th was attributable to Josh, that first continuance alone extends his trial date beyond the 120-day term. But returning to the question about the comments made by Attorney Wilson, Attorney Wilson filed a motion to withdraw shortly after being appointed. Now, this was a unilateral motion that Josh had no say in. He did not acquiesce in, and in fact, he explicitly objected to his counsel's withdrawal for the record. The fact that counsel was then not prepared, or potentially not prepared, speaks more to the fact that he anticipated withdrawing from representing Josh, again, unilaterally. And that, we contend, therefore, should not be attributed to Josh. Furthermore, the reason for the October 3rd continuance to January 17th was, again, explicitly to find another conflict-free attorney for Simeon. The court made that very clear. The court also made clear on both occasions that the delay of the trial date was over Josh's objection. So that is clear in the record. You know, to the extent that the state argues that counsel was unprepared or did not properly object, that is simply contradicted by the record. I also do want to address the motion to withdraw filed by the first counsel, Alex Enyart. He did file a motion to withdraw on August 25th. That motion also has no effect on the analysis with respect to the first continuance. Under this court's case law in column McKinney and also Roberts, that, again, was a unilateral motion to withdraw due to a per se conflict of interest. Again, Josh had no say in this motion. He did not acquiesce in it. And, therefore, under those cases, unlike the cases cited by the state, where the defendant did acquiesce by the change of his attorney or somehow contributed to the conflict or the need for the withdrawal, this is not one of those situations. Josh had no choice. I want to back up just a little bit. I want to make sure I have my timeline right on this. This matter was set for trial on the 120th day. Is that correct? That's correct, Your Honor. Okay. And am I correct that the state moved to join all three defendants on the 19th of August? Yes, that is correct. And in doing so, then, that triggered all these requests for conflict-free attorneys for several of the total defendants? Well, sitting in the city would have needed a conflict-free attorney regardless, I believe. But, yes, had the state not joined the Defendant's Act this very late date, this issue with Simmons' attorney causing the delay of the whole trial would not have arisen. I'd also like to highlight that the motion to withdraw filed by Josh's first attorney, Enyart, was also occasioned by the state providing information very late, just several days prior to trial. In his motion to withdraw, Attorney Enyart disclosed that that same day, August 25th, he had received discovery from the state disclosing Jerome Snowden as a witness. Jerome Snowden was already one of Attorney Enyart's clients. Again, this was four days before the trial. A motion for discovery had been filed way back in May. So had this conflict been discovered at an earlier time, this could have potentially been addressed without there being any... But Attorney Enyart had filed a motion to continue, though, at that point. Correct. He had, but by the time he filed the motion to withdraw, he had already withdrawn that motion to continue, objected to any further delay of the trial, and demanded a speed trial. So neither the motion to continue nor the motion to withdraw had any effect on the actual reason for the delay of the trial, which was, again, finding conflict-free counsel for Josh's brother. I do want to point out that there is one additional component to this analysis of ineffective assistance of counsel. This was preserved in the sense that Josh objected to the delays all along the way. However, it was not preserved in the sense of counsel filing a motion to discharge once the 120 days had passed. That is a required step, so we concede that that was not fully preserved. However, it's clearly ineffective assistance for counsel not to file that motion for discharge when not only was there clearly a violation of his speedy trial rights, but counsel even attempted to preserve that objection prior to trial simply by saying, oh, you know, we preserve any such speedy trial objections. He sort of just made an off-the-cuff comment to that effect. This is clearly prejudicial to Josh, as had counsel filed that motion, the charges against him would have had to be dismissed. Does anyone have any further questions? So you're asking us to reverse based on ineffective assistance of counsel? Based on the violation of Josh's speedy trial rights and counsel's ineffectiveness in failing to file that motion for discharge, which was a necessary component. Can you address very briefly the severing of the weapons charge? I'd be happy to, Your Honor. Just very briefly. Very briefly, yes. There's clear case law that the UUWF charges should have been severed, and I don't think the state even really is able to dispute that. You know, it's clear from the case law that it doesn't even matter if the nature of the conviction is given to the jury or if it's merely a brief mention or, you know, more emphasized. It was the initial exposure to the jury of Josh's status as a felon that was prejudicial. This was a preserved error, so the issue really before this Court is harmless error, and the error here was not harmless. Again, the exposure of Josh's felon status to the jury was prejudicial in that they may have been, you know, used that as a basis to convict him on the aggravated discharge, particularly where it was really just a matter of circumstantial evidence identifying him. Am I correct? They severed the bond violation charge but not the possession or the unlawful use of the weapon by a felon? That's correct, Your Honor, and I really can't see any principled basis to do that. The state argues that the bail bond charge, if I may continue. Please do. The state argues that the bail bond charge was somehow more prejudicial, but I fail to see how that's the case given that a felon conviction, you know, would show that he's actually been found guilty of a crime as opposed to the bail bond charge. Thank you. Thank you. That's the last time for rebuttal. Thank you. Appellee, please identify yourself for the record and you may proceed. Good morning, Your Honors. Counsel, may it please the Court, Richard Gunner, on behalf of the people of the state of Illinois. Your Honors, as defendant rates basically the one issue, I will concentrate on that issue as well. The fact is simply here that the law is not that a defendant can never be found responsible for that time of tributable if a attorney withdraws due to a conflict. The cases, as we go through fully in the brief, that defendant cites in support of this proposition are readily distinguishable. In each of those cases, counsel would withdraw significantly prior to the time when trial was scheduled. In each of those cases, new counsel was appointed relatively quickly and the appellate court specifically found that there was extensive delay by the people and or that the people simply didn't move prior to defendants in timely fashion thereafter. Contrast that with the case of people versus the employer, the fourth district case that the people cited in support of their position, which is that five days before, almost identical to this case, counsel moved to withdraw due to conflict and that court found that, of course, there is no possibility that a new attorney would be able to get off the street. But let me interrupt you if I can, counsel. I mean, wasn't there late discovery, as counsel mentioned before? There was late discovery related to defendant. I believe that there was late discovery due to co-defendant Simeon. So in Simeon's case, that might be a separate issue. But why should the defendant in this case be prejudiced as a result of late discovery in Simeon's case? Why should a co-defendant be prejudiced? He shouldn't be. And that was the only reason that the trial was continued. Ultimately, that will be a different issue before this court. It's not. We have a two-fold reason why counsel, defendant's attorney, was not and could not be prepared. First of all, we have the fact that defendant's attorney filed a motion and argued on two separate dates, the 22nd of August and then again on the 25th, basically saying that he wasn't ready and couldn't be ready. It was even more interesting that the discovery violation, which again wasn't in this case. Why? Because in his motion, and that at the hearing on September 12th, which obviously was after the trial was continued, counsel for defendant stated, Well, wait a second. I discovered that I have a client that I have a conflict. Why? Because we actually have a stipulation that this other client was potentially injured on this same date and that defendant potentially was the one that may have injured him, i.e. may have shot him. That was, counsel was aware of that well before. That was not disclosed only on the 25th. That was something that this attorney knew weeks, if not months in advance. So unlike the attorney for Simeon Patterson, the attorney here knew and had all of that information in his possession. It actually supports counsel's concern that he was not prepared due to the voluminous discovery in this case because he just discovered that that day. But under Roberts and the other case law that the defendant decided, how do we count that towards the defendant in this case? How do we count these issues with the conflict-free counsel against the defendant? How do we count days against him? How do we count the days? Yeah, I mean, how do we attribute those delays to the defendant here? Well, we have two reasons. We have one, the fact that counsel stated that he was not prepared. His motion to continue based on his lack of preparation, the courts have said that regardless of whether or not the defendant asserts his right to a speedy trial, regardless of whether he objects to a motion to continue, that time is and pretty much always will be attributable to the defendant. So that is a separate issue. Which case are you citing? Which case are you citing in that proposition? I'm not with McKinney. I'm sorry, I do cite it more ostensibly in my brief, but McKinney for sure.  Bowman, Sullis, Carr, all of those cases stand for the proposition that if an attorney moves to continue a case because he is not prepared, the courts pretty much will always grab that and will always find it attributable to the defendant regardless of whether or not the defendant agrees, regardless of whether or not the defendant tries to assert his speedy trial right. And of course the concern in both the circumstance when the defendant as attorney moves to continue and moves to withdraw due to a conflict, in each of those cases the reason is that the courts have found that the concern is that the defendant is placed in a no-lose situation, whether intentionally or otherwise. I'm not accusing in any way or suggesting that counsel here did this on purpose. I think it's more based on the fact that this case is complex. There were 50 plus exhibits. There were 30 plus witnesses. There were dozens and dozens of hours of videos. But by the same token, if you have an attorney that says, I'm not prepared because of the complexity, and then you have a defendant that says, I want to go to trial regardless, that's a problem. It's also a problem when the attorney moves to withdraw due to a conflict and the defendant says, I don't agree. Well, as the courts have suggested, the problem is you then have the countervailing concern that I don't think it's speculative. I think it is all of us certain. If they went to trial on the 29th, when counsel had to withdraw due to a conflict, even if an attorney could be appointed that same day or the next day, which was the case of the lawyer, the fact is that new attorney would not be able to get up to speed in time for trial. And that's what the courts are concerned with. That's what the prosecutor argued, is wait a second. What we will have here, if we go to trial on the 29th, what we will have here if we don't grant the motion to withdraw or the motion to continue, is we will have, the argument we'll be making here is not a speedy trial violation. We'll be arguing an effective assistance of counsel, because counsel doesn't work there. And that is the countervailing concerns that almost every court that has addressed these issues have found. And it's worth noting that while defendant correctly states that they did withdraw the motion to continue, that was only done, and this part I do believe was a trial tactic. Counsel did not move to withdraw his motion to continue even after defendant had said, I don't want to continue. Counsel only moved to withdraw after the court had vacated. Did not move to withdraw after he had granted co-counsel, Simeon's attorney's motion to withdraw due to conflict. Only after the court had vacated and set a new trial date did the defense attorney here make an oral motion saying, well, at the insistence of my client, I'm moving to withdraw our motion. So basically what we have here is a circumstance where defendant is basically trying to have this case stated to him. He wants to assert his speedy trial right, but he didn't take any actions to really protect that. Can you address counsel, since your time is about to run up, the severing of the charges related to the unlawful use of a weapon by a felon? Very briefly.  The fact is simply the law is not that every UUW case must be tried separately. The law is that you must look at each case on the basis of the facts of that case. Here we have, I don't know if I've ever seen a case or a discussion of a case where there was less potential prejudice relating to the possible concern of a prior felony. There was no mention of a type of charge. There was a stipulation here. The prosecutor did not raise it in opening. Very, very briefly in closing, simply said, there's been a stipulation that the defendant has had a prior felony. And on the record, it is clear that during one year, the trial court asked questions of each of the jurors. Both the fact that a gun was used in this case, would that prejudice you? And the answer to all of the sitting jurors was no. And two is the fact that a prior defendant has been guilty of a prior felony, would that impact you? And the answer was, yet again, no. So why sever the bond violation and not the unlawful use of a weapon? And I believe the record shows that at one point, the state intimated that they usually sever these charges and then later did not agree to sever. Is that correct? And my correct explanation is completely different. Because that was something that occurred while the defendant was out of charges. And, you know, the concern is that the jury there, it's much harder, I believe, to admonish a jury not to consider the fact that this guy keeps committing felonies and keeps committing felonies while he's out of bond from another felony. As opposed to the mere mention that, you know, of a UUW, i.e. that he has, you know, a prior felony. The bond information would have been much more prejudicial. In reference to the fact that the state's attorney commented that, you know, he would agree to sever or that it had to sever, I'm just not sure that it's clear whether or not that was referencing the bond or the, you know, the UUW in general. I think that the record seems to suggest that it was a reference to the bond, you know, case, not the UUW, not the prior felony. Any further questions?  No, nothing. Thank you, counsel. For all of these reasons, we would ask the court to find that there was no prejudice, that if there was any error of the prejudice, it wasn't prejudice, but that, indeed, there was no error to affirm the defendant's conviction. Very well. Thank you, Your Honor. Just very briefly, the delay of the August 29th trial date would not have been necessary if the state did not, in the week before trial, join all three defendants together and disclose a key witness at a very late date. My colleague here makes two contradictory claims, that, first, that this witness was only relevant as to Simeon, but, second, that it was relevant, but that counsel should have known of this witness earlier. The state did not dispute the claims made in counsel's motion to withdraw at any point up until today. The motion to withdraw, as counsel states, on August 25, 2022, the Jackson County State's attorney gave to defense counsel people's discovery to defendant in which they disclosed Jerome Snowden, Jr. Counsel is suggesting that this assertion might have been false or that this witness was not a key witness or that he should have somehow known of this person beforehand, but that's simply not the case. The state did not disclose this witness until four days before the trial was scheduled. This was a witness that the state intended to use as a key witness. He did not ultimately end up testifying, but there was some later motion practice explaining that this person was apparently the alleged target of the shooting and had been, in fact, shot. The state intended to use him as a witness to show the supposed trajectory of the shots. You know, this was a key witness that the state had an obligation to disclose. It was not only relevant to Simeon, and the state apparently did not do so until four days prior to trial, necessitating the withdrawal of counsel. As to defense counsel suggesting that he might not have been ready for trial prior to the 29th, there was a lot of discussion back and forth that really revolved around counsel's ability to both go over the discovery with Josh and proceed to trial. Counsel actually said on a couple different occasions he was ready, willing, and able to go to trial. He just wouldn't be able to also go over to the jail and go over the discovery with Josh. But what really matters here is that counsel withdrew that motion to continue, counsel objected to the delay, and counsel demanded a speedy trial. The McKinney case that counsel refers to explains that when a motion to continue has been filed, that delay ends once the motion is withdrawn. And on this occasion, the motion was withdrawn on August 25th. So, you know, we've conceded that there may be a 10-day delay attributable to Josh, but that still doesn't change the fact that the trial was then continued all the way from August 29th to October 3rd, and then again from October 3rd to January 17th. Again, for the explicit purpose of finding conflict-free counsel for Simeon. What effect does the withdrawal of the motion to continue have upon a court that doesn't have trial settings within those 10 days? How do we count that? Your Honor, you know, I'm aware that there is an argument to be made that that motion should actually, that the delay should actually run all the way up until the next trial setting. That's not an argument that the State in this case has actually made. No, but there's case law on that. There is, and I'm aware of this Court's decision in Jackson. That case is a little bit different because it addressed a local rule that was not present in this case. But there's nothing in the record, is there, that says, or maybe there is, that says the next available date is October. That's correct. There's nothing in the record without a fact. So, you know, we have to, and really it doesn't matter because the trial was scheduled on day 120. So, you know, and that's my point is if we have, if we don't have a jury setting in this county, and your client filed the motion to continue originally, don't we attribute that delay all the way up until the next, until the Court announces the next trial date? It's our position that only the 10 days should count. However, even if this Court were to count all the way up to October 3rd, that next continuance also should not have been attributed to Josh because it was for the explicit purpose of finding conflict-free counsel for Simeon. We also contend that the motion to continue, even though it may have had, you know, in the abstract a delay attributable to the defendant, it really didn't actually have an effect on the trial date. The trial date was moved because of the need to find conflict-free counsel for Simeon. The trial had, or the trial judge had... How do we know that? Because the trial judge explained that. The Court said, in order to be fair to Simeon Patterson, we need to move this trial date. And, in fact, he even agreed at the next Court appearance, September 12th, that the trial had been moved over Josh's objection. So the trial judge made clear the reason for moving the trial date was not because of the motion to continue. It was not a delay acquiesced to by Josh. It was because of the need to find conflict-free counsel for his brother. So the motion to continue, then, would have had no effect on the next available trial date for this Court? Under the facts of this case, no, Your Honor. The trial was already going to be moved because of the issue with Simeon's counsel. But we don't know the date. We don't know the date that it would have been moved to. Do we? We don't, but I would submit that it really doesn't matter because any date would have been too late at that point. And, again, this is all really traceable back to the State's decision to, you know, disclose these witnesses at a very late hour, join these defendants at a very late stage of the game. Can we attribute that to the penalties the State? I'm sorry, could you repeat that? Can we penalize the State for doing that? I think you should, Your Honor. I think, you know, it's the State's obligation to bring the defendant to a speedy trial. And by making all these huge strategic changes in the case at the very last minute, the State was then unable to bring the defendant to a speedy trial. Okay, and you have some case law that would say that. Well, the case law is the cases that hold that when a conflict arises at the last minute and a lawyer has no choice but to withdraw, that's not a delay attributable to the defense. Okay, I understand that law. I'm more interested in the law that says that when they consolidate cases or join the defendants, that that somehow penalizes the defendant such that he can still claim his 10 days or whatever he's got. Sure, so the Roberts case does hold that speedy trial rights are personal to the accused. So, you know, the joinder issue does prejudice the defendant when it results in a delay of the trial that really has nothing to do with his own case. In terms of the State being penalized, I think really what that just goes to is I'm attempting to draw a distinction here between the cases cited by the State where the facts were different. The defendant acquiesced in the change in attorney. The defendant, you know, did something to cause things to change at the last minute. This case is not that case. This case is a case where due to factors completely outside the defense's control, a per se conflict arose and his attorney had to withdraw. Okay. I'm more interested, I guess, maybe I didn't get my answer yet. I'm more interested in you convincing me that the motion to continue did not affect the next trial setting, which the record seems to suggest is the trial date. What is wrong about that sentence? Well, Your Honor, I think it assumes a counterfactual, which is that the case hadn't been joined. Okay, the case hadn't been joined, so the motion to continue hadn't been filed? If the cases had been joined, I'm sorry, if the cases had not been joined and defense counsel filed this motion to continue, I think we would have a different situation where that motion to continue potentially could be attributed to Josh because it would have been the actual reason for the delay of the trial. Here, the reason for the delay of the trial had nothing to do with the motion to continue. It had to do with the need to find conflict-free counsel for Simeon, and that was unrelated to the motion to continue. But we don't want defendants filing motions to continue and then withdrawing them and saying you only have 10 days left and then there's not another setting available. I understand that, Your Honor, and I guess my response to that would just be that even if this court does attribute that period up to October 3rd to Josh on that reasoning, which we contend is not – we would ask you not to do that. But if you do that, the second continuance also extended the trial beyond the 120 days. The second continuance then would have nothing to do with Josh's conduct. Correct. Okay. Correct. I just wanted the distinction made in my mind. Thank you. Thank you. Thank you, Counsel. We will take this matter under advisement and issue a ruling in due course.